Shereen Ramona ZIPFEL, Individually and as Administratrix of Ian Charles Zipfel, deceased, Plaintiff–Appellant,

v.

HALLIBURTON COMPANY; Atlantic Richfield Company; Crowley Maritime Corporation; Brinkerhoff Maritime Drilling, Inc.; Continental Oil Company (Conoco, Inc.); Hudson Bay Oil & Gas Company, Ltd.; Hudbay Oil, Ltd. (Indonesia); Brinkerhoff Maritime Drilling, Ptd, Ltd.; Hudbay Oil (Malacca), Ltd.; Dome Petroleum, Ltd.; Dome Petroleum Corporation; Arco Oil and Gas Corporation; PT Airfast Services Indonesia; and Exquisitor Helicopter Corporation, Defendants–Appellees.

Ten Fong CRAIG, Individually and as Administratrix of the Estate of William Henry Craig, deceased, Plaintiff–Appellant,

v.

ATLANTIC RICHFIELD COMPANY; Crowley Maritime Corporation; Brinkerhoff Maritime Drilling, Inc.; Continental Oil Company (Conoco, Inc.); Hudson Bay Oil & Gas Company, Ltd.; Hudbay Oil, Ltd. (Indonesia); Brinkerhoff Maritime Drilling, S.A.; Brinkerhoff Maritime Drilling, Pte, Ltd.; Hudbay Oil (Malacca), Ltd.; Dome Petroleum Ltd.; Dome Petroleum Corporation; PT Airfast Services Indonesia; and Exquisitor Helicopter Corporation, Defendants–Appellees.

Vyner Gerard ALBUQUERQUE, Plaintiff–Appellant,

v.

OCEANEERING INTERNATIONAL, INC.; Oceaneering International, SDN, BHD.; Halliburton Company; Atlantic Richfield Company; Crowley Maritime Corporation, Brinkerhoff Maritime Drilling, Inc.; Continental Oil Company (Conoco, Inc.); Hudson Bay Oil & Gas Company, Ltd.; Hudbay Oil, Ltd. (Indonesia); Brinkerhoff Maritime

---

5. The maximum perjury penalty is five years, 18 U.S.C. § 1621, whereas the penalty applicable in this case is three years.

Drilling, PTE, Ltd. Hudbay Oil (Malacca), Ltd.; Dome Petroleum, Ltd.; Dome Petroleum Corporation; Arco Oil and Gas Corporation; PT Airfast Services Indonesia; and Exquisitor Helicopter Corporation, Defendants–Appellees.

Chan Luck CHEE, Plaintiff–Appellant,

v.

McCLELLAND ENGINEERS, INC.; McClelland Engineers, S.A.; McClelland Engineers SDN. BHD.; Halliburton Company; Atlantic Richfield Company; Crowley Maritime Corporation; Brinkerhoff Maritime Drilling, Inc.; Continental Oil Company (Conoco, Inc.); Hudson Bay Oil & Gas Company, Ltd.; Hudbay Oil, Ltd. (Indonesia); Brinkerhoff Maritime Drilling, S.A.; Brinkerhoff Maritime Drilling, PTE, Ltd.; Dome Petroleum, Ltd.; Dome Petroleum Corporation; Arco Oil and Gas Corporation; PT Airfast Services Indonesia; and Exquisitor Helicopter Corporation, Defendants–Appellees.

Patrick Paul GRUNKE,
Plaintiff–Appellant,

v.

ATLANTIC RICHFIELD COMPANY; Crowley Maritime Corporation; Brinkerhoff Maritime Drilling, Inc.; Continental Oil Company (Conoco, Inc.); Hudson Bay Oil & Gas Company, Ltd.; Hudbay Oil, Ltd. (Indonesia); Brinkerhoff Maritime Drilling, S.A.; Brinkerhoff Maritime Drilling PTE, Ltd.; Hudbay Oil (Malacca), Ltd.; Dome Petroleum, Ltd.; Dome Petroleum Corporation; Arco Oil and Gas Corporation; PT Airfast Services Indonesia; and Exquisitor Helicopter Corporation, Defendants–Appellees.

Nos. 86–1815, 86–1832, 86–1834
to 86–1836.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 9, 1987.

Decided June 23, 1987.

Amended Nov. 24, 1987.
As Amended Nov. 24, 1987 and
Jan. 26, 1988.

Benton Musselwhite, Houston, Tex., for plaintiffs-appellants.

Earnest N. Reddick, San Francisco, Cal., for defendants-appellees Crowley Maritime Corp., Brinkerhoff Maritime Drilling Corp., Brinkerhoff Maritime Drilling Corp., S.A., and Brinkerhoff Maritime Drilling Corp. PTE, LTD.

Graydon S. Staring, San Francisco, Cal., for defendant-appellee Halliburton Co.

Steven M. Perl, San Francisco, Cal., for defendant-appellee McClelland Engineers, Inc.

Elliot L. Bien, San Francisco, Cal., for defendant-appellee Oceaneering Intern., Inc.

James M. Derr, Los Angeles, Cal., for defendants-appellees Atlantic Richfield Co. and Arco Oil & Gas Corp.

Robert J. Finan, San Francisco, Cal., for defendant-appellee Conoco, Inc.

Before SCHROEDER, WIGGINS and THOMPSON, Circuit Judges.

## AMENDED OPINION

DAVID R. THOMPSON, Circuit Judge.

These related but unconsolidated actions were filed in the United States District Court for the Northern District of California by or on behalf of American and foreign seamen who were killed or injured in an air crash in Indonesia. The actions

were filed under the Jones Act, 46 U.S.C. § 688, the Shipowners Liability (Sick and Injured Seamen) Convention of 1936, 54 Stat. 1693, general maritime law, and state law. Motions to dismiss the actions on the ground of *forum non conveniens* were filed and denied. Upon reconsideration, another judge of the same court granted the motions and dismissed all of the cases, subject to conditions. *Sherrill v. Brinkerhoff Maritime Drilling*, 615 F.Supp. 1021 (N.D.Cal.1985). The dismissal order was filed August 12, 1985. It provided in part that the order would become final "as to any plaintiff upon that plaintiff's failure to have filed a new action [in Indonesia or Singapore] upon the expiration of ninety days from the date of filing this order." No plaintiff filed such an action. Instead, a parallel Texas state court action which some of the plaintiffs had previously filed was reactivated. The district court then restrained, and later permanently enjoined, the plaintiffs and their attorneys from prosecuting any action arising out of the air crash in any court in the United States. This permanent injunction was included in a final judgment which the district court entered January 31, 1986. The final judgment dismissed all of the plaintiffs' actions, unconditionally, on the ground of *forum non conveniens*. A number of the cases originally filed were settled. Five cases remain, and are involved in this appeal.

We have jurisdiction under 28 U.S.C. § 1291. We affirm the district court's dismissal of the foreign seamen's claims. We reverse the dismissal of the claim filed on behalf of the deceased American seaman. We vacate that part of the permanent injunction enjoining the foreign seamen from prosecuting their claims in state court. We modify and affirm the grant of the permanent injunction as it pertains to the claim filed on behalf of the American seaman.

## FACTS AND PROCEEDINGS

The plaintiffs' claims arise out of a 1981 airplane crash at Simpang Tiga Airport in Indonesia. The airplane was operated by P.T. Airfast Services, an Indonesian corporation, and chartered by Hudbay Oil, an Indonesian subsidiary of a Canadian corporation. At the time of the crash, the airplane was transporting crew members of the oil drilling vessel, Brinkeroff I, from Singapore to Indonesia, where the crew members were to be flown by helicopter to the vessel. The Brinkerhoff I is an American flag vessel. For approximately nineteen months prior to the crash, this vessel had operated in Far Eastern waters near Indonesia and Singapore. As the district court observed:

> It is not disputed that the operative facts on which liability and damages are premised occurred in Indonesia, and to a lesser extent, in Singapore. These include the maintenance and operation of the aircraft by Airfast, the chartering of the aircraft by Hudbay, and the actions of the crew and the Indonesian air traffic controllers. Eye witnesses and other knowledgeable persons are located there. Records and physical evidence relating to the operation and crash of the aircraft, the activities of the defendants, the injuries suffered by plaintiffs, and the post-accident investigation are also located there. It may be, as plaintiffs contend, that other evidence is scattered around the world, but none of it is shown to be located in this district. That the bulk of it is located in Singapore or Indonesia is demonstrated by plaintiffs' consolidated deposition notice ...

*Sherrill*, 615 F.Supp. at 1031–32.

The Brinkerhoff I is owned by Brinkerhoff Maritime Drilling Corporation ("BMD"), a Delaware corporation with home offices in San Francisco. BMD's base of corporate operations was San Francisco, California, and the Brinkerhoff I's base of operations was either Singapore or Indonesia, or both.[1] The crew members

---

1. The specific location of the Brinkerhoff I's operations was determined by Atlantic Richfield Indonesia, Inc. ("ARII"), pursuant to a Day–Work Drilling Contract between BMD and ARII. Although plaintiffs make much of American choice of law and forum clauses in this contract, it is not relevant to this action that BMD and ARII agreed to resolve conflicts between themselves in America. *See Bailey v. Dolphin*

whose claims are involved in this appeal were employees, respectively, of some of the defendants. BMD employed Grunke and decedent Craig; the district court found that Zipfel was employed by Halliburton Ltd., Chee by McClelland Engineers S.A., and Albuquerque by Oceaneering International, S.D.N. B.H.D., each a foreign subsidiary of defendants/appellees Halliburton Company, McClelland Engineers, Inc. and Oceaneering International, Inc., respectively. Decedent Craig was an American and his wife, plaintiff Ten Fong Craig, is Singaporean; decedent Zipfel was British and his wife, plaintiff Shereen Ramona Zipfel, is Singaporean; plaintiffs Chee and Albuquerque are Singaporean; and plaintiff Grunke is Australian.

The cases were originally assigned to District Judge Aguilar. The defendants moved to dismiss all of the actions on the ground of *forum non conveniens*. Judge Aguilar concluded that American law applied to all of the cases and denied the motions. The cases were subsequently reassigned to District Judge Schwarzer. The defendants renewed their *forum non conveniens* motions. Judge Schwarzer concluded that American law, and consequently the Jones Act, applied only to the claim of the American crew member, and foreign law applied to the claims of the foreign crew members. He then dismissed all of the cases on the ground of *forum non conveniens*, subject to conditions.[2] The permanent injunction and final judgment of dismissal followed.

## DISCUSSION

### A. *The District Court's Reconsideration of Previous Denial of Motion*

We review for abuse of discretion a district judge's decision to reconsider an interlocutory order by another judge of the same court. *Castner v. First National Bank*, 278 F.2d 376, 380 (9th Cir.1960). In *Castner* we stated that the second judge does not conscientiously carry out his judi-

cial function "if he permits what he believes to be a prior erroneous ruling to control the case." 278 F.2d at 380.

■ Judge Schwarzer chose to reconsider Judge Aguilar's denial of the defendants' *forum non conveniens* motions because, in his view, Judge Aguilar had failed to consider relevant Supreme Court precedent, including the Supreme Court's decision in *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), and had failed to follow relevant Ninth Circuit precedent, including our decision in *Phillips v. Amoco Trinidad Oil Co.*, 632 F.2d 82 (9th Cir.1980), *cert. denied sub nom., Romilly v. Amoco Trinidad Oil Co.*, 451 U.S. 920, 101 S.Ct. 1999, 68 L.Ed.2d 312 (1981). As we stated in *Castner*, "we are not concerned at this stage with whether the second judge is in fact correct, but whether he was justified in reviewing the prior judge's ruling at all. [The second judge's] substantive ruling may be, as a matter of law, erroneous, yet his right and power to [reconsider the prior judge's interlocutory ruling] is perfectly justified as a matter of discretion." *Castner*, 278 F.2d at 380–81. Judge Schwarzer did not abuse this discretion by deciding to reconsider Judge Aguilar's prior ruling.

### B. *The District Court's Forum Non Conveniens Dismissal Order*

#### 1. *Standard of Review*

We review for abuse of discretion a district court's dismissal of a case on the ground of *forum non conveniens*. *Piper*, 454 U.S. at 237, 102 S.Ct. at 256; *Pereira v. Utah Transport, Inc.*, 764 F.2d 686, 690 (9th Cir.1985), *cert. dismissed*, 475 U.S. 1040, 106 S.Ct. 1253, 89 L.Ed.2d 362 (1986).

The forum non conveniens determination is committed to the sound discretion of the trial court. It may be reversed only when there has been a clear abuse of discretion; where the court has considered all relevant public and private

International, Inc., 697 F.2d 1268, 1276, n. 24 (5th Cir.1983).

**2.** The conditions of dismissal were that the defendants (1) submit to the foreign court's jurisdiction, (2) waive any statute of limitations de-

fenses, (3) make witnesses available, (4) not object to use of discovery materials and (5) agree to satisfy any judgment entered against them.

interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference.

*Piper*, 454 U.S. at 257, 102 S.Ct. at 266 (citations omitted).

Before dismissing a case for *forum non conveniens*, a district court must first make a choice of law determination.[3] *Pereira*, 764 F.2d at 688. We review the district court's choice of law determination de novo. *Id.; Phillips*, 632 F.2d at 84. We review under the clearly erroneous standard the district court's findings of fact underlying its choice of law determination. *Villar v. Crowley Maritime Corp.*, 782 F.2d 1478, 1479–80 (9th Cir.1986).

### 2. *Choice of Law*

#### a. *The "Seaman Status" Requirement*

For the Jones Act to apply, "seaman" status must be established. *Estate of Wenzel v. Seaward Marine Services, Inc.*, 709 F.2d 1326, 1327 (9th Cir.1983). The district court assumed the injured and deceased crew members were "seamen." This assumption is not challenged on appeal. Accordingly, we treat all of the injured and deceased crew members as "seamen."

#### b. *Analysis*

The Supreme Court in *Lauritzen v. Larsen*, 345 U.S. 571, 583–92, 73 S.Ct. 921, 928–33, 97 L.Ed. 1254 (1953) listed seven factors to be considered in determining whether a claim is subject to the Jones Act: (1) place of the wrongful act; (2) the flag of the vessel; (3) allegiance or domicile of the injured party; (4) allegiance of the shipowner; (5) place and choice of law of the contract; (6) accessibility of a foreign forum; and (7) law of the forum. In *Hellen-*

ic Lines, Ltd. v. Rhoditis*, 398 U.S. 306, 308–09, 90 S.Ct. 1731, 1733–34, 26 L.Ed.2d 252 (1970), the Court added an eighth factor: the shipowner's base of operations.[4] In *Rhoditis*, the Court emphasized that the factors should not be applied in a mechanical fashion, and that the list is not exhaustive. *Id.*

#### (i) *The "Drilling Vessel" Qualification*

In cases involving typical "blue-water" vessels "plying international waters," the law of the flag is of "cardinal importance." *Lauritzen*, 345 U.S. at 584, 73 S.Ct. at 929. "[T]he law of the flag [is applied] on the pragmatic basis that there must be some law on shipboard, that it cannot change at every change of waters, and no experience shows a better rule than that of the state that owns her." *Id.* at 585, 73 S.Ct. at 930. For this reason, "the weight given to the ensign overbears most other connecting events in determining applicable law" aboard traditional vessels. *Id.*

In cases involving atypical vessels such as semi-submersible or floating oil drilling vessels, however, courts do not give the law of the flag controlling weight; rather, other factors are emphasized. *Koke v. Phillips Petroleum Co.*, 730 F.2d 211, 219 (5th Cir.1984); *Phillips*, 632 F.2d at 86–87. The place of the injury, the domicile of the injured person and the location where the employment contract was entered into take on greater significance. *Koke*, 730 F.2d at 219; *Phillips*, 632 F.2d at 86–87. The base of the vessel's day-to-day operations is considered to be more important than the location of the corporate headquarters. *Phillips*, 632 F.2d at 88.

Plaintiffs argue that the drilling vessel qualification should not apply to the Brinkerhoff I because it was not a stationary

---

**3.** The Second Circuit has stated that a choice of law determination is not involved in a *forum non conveniens* analysis. *Cruz v. Maritime Co. of Philippines*, 702 F.2d 47, 48 (2nd Cir.1983) (per curiam). The Second Circuit stands alone in this view. *See Nicol v. Gulf Fleet Supply Vessels, Inc.*, 743 F.2d 289, 292–93 (5th Cir. 1984); *Needham v. Phillips Petroleum co. of Norway*, 719 F.2d 1481, 1483 (10th Cir.1983); *Szumlicz v. Norwegian American Line, Inc.*, 698 F.2d 1192, 1195 (11th Cir.1983). *See also* Edel-

man, *Forum non Conveniens: Its Application in Admiralty Law*, 15 J. of Maritime Law and Commerce 517, 529–32 (1984).

**4.** The analysis for determining whether the Jones Act applies to these claims is also controlling on the issue whether to apply American maritime law. *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959).

drilling rig.[5] Although *Phillips* involved a drilling rig which remained in one location for several years, the drilling rig analysis has been applied to vessels which do not remain in a single fixed location. In *Koke*, 730 F.2d at 219, the Fifth Circuit applied the drilling rig analysis to a non-stationary drilling vessel which could move under its own power. The *Koke* court described the vessel in these words:

> While the Sedco/Phillips SS certainly has greater mobility than a fixed rig which may remain in place for several years, it was not, and was not designed to function as, a vessel "plying the seas" in the traditional sense. It is a semi-submersible platform that rests on columns attached to flotation chambers. Its movements occur within a specific and limited geographical area. Further, when travel over long distances is required, it is apparently towed to a location....

*Id.*

▇ The district court found that the Brinkerhoff I was unable to move under its own power, had to be towed by other vessels when moved, and had remained for long periods of time prior to the accident at only a few drilling locations in the general vicinity of Indonesia. *Sherrill*, 615 F.Supp. at 1027–28. These findings support the district court's conclusion that the drilling vessel qualification applies to the Brinkerhoff I. *Koke*, 730 F.2d at 219.

(ii) *Applying the Choice of Law Factors*

▇ The applicability of the Jones Act to the claim for the death of the American seaman was not disputed. Accordingly, the district court determined that the Jones Act applied to his claim. This determination is not challenged on appeal.[6]

▇ In determining whether the Jones Act applies to the claims of the foreign seamen, the district court focused on the factors which receive greater weight in the drilling rig context. These factors point toward the application of foreign law to these claims. The place of the alleged wrongful act was Indonesia, the base of operations was Indonesia or, to a lesser extent, Singapore, and the employment contracts or other hiring arrangements were made in foreign locations. Moreover, the allegiance of the injured foreign seamen is foreign and a foreign forum is accessible to them. While other factors point toward application of American law (the law of the flag, the allegiance of the defendant shipowner, the corporate headquarters of the defendant shipowner, and the law of the forum), these factors are of lesser importance in a choice of law analysis where the vessel is a drilling rig as opposed to a typical blue-water vessel plying international waters. *Koke*, 730 F.2d at 219–20; *Phillips*, 632 F.2d at 86–88. The district court concluded that foreign law, not American law, applies to the claims of the foreign seamen. We agree.

3. *Forum Non Conveniens Analysis*

Having determined that foreign law applies to the claims of the foreign seamen, and it having been conceded that American law applies to the claim on behalf of the deceased American seaman, we now consider whether the district court erred in dismissing all of the claims for *forum non conveniens*. We consider separately the claims of the foreign seamen and the claim on behalf of the deceased American seaman.

a. *The Foreign Seamen*
   i. *Availability of an Alternative Forum*

At the outset of any *forum non conveniens* inquiry, the court must determine

---

5. Between 1979 and February 1983, the Brinkerhoff I operated at the following locations:

| | |
|---|---|
| June 1979–Sept. 1979 | South China Sea |
| Sept. 1979–Nov. 1979 | Singapore Harbor |
| Nov. 1979–April 1981 | Java Sea |
| April 1981–June 1981 | Malacca Straits |
| June 1981 | To Singapore Harbor for ten days of repairs |
| June 1981–Feb. 1983 | Java Sea |

The airplane crash out of which these cases arose occurred April 28, 1981.

6. That all the claims in this case arise out of one occurrence does not require the application of uniform law to the claims of plaintiffs of differ-

whether there exists an alternative forum. Ordinarily, this requirement will be satisfied when the defendant is "amenable to process" in the other jurisdiction. [*Gulf Oil Corp. v.*] *Gilbert*, 330 U.S. [501,] 506–507 [67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947)]. In rare circumstances, however, where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative, and the initial requirement may not be satisfied. Thus, for example, dismissal would not be appropriate where the alternative forum does not permit litigation of the subject matter of the dispute. (citation omitted).

*Piper*, 454 U.S. at 254, n. 22, 102 S.Ct. at 265, n. 22.

■ The defendants bear the burden of proving the existence of an adequate alternative forum. *Cheng v. Boeing Co.*, 708 F.2d 1406, 1411 (9th Cir.), *cert. denied sub nom. Lui Su Nai–Chao v. Boeing Co.*, 464 U.S. 1017, 104 S.Ct. 549, 78 L.Ed.2d 723 (1983). They carried this burden. As to Singapore, the defendants submitted affidavits and declarations which showed that the courts of Singapore have jurisdiction over parties submitting to their jurisdiction, which submission may be by consent; that the defendants may waive the statute of limitations; that discovery of documents and interrogatories are available, but depositions are allowed only in certain circumstances; that witnesses may be subpoenaed within Singapore; that Singapore permits third party indemnity claims; that Singapore has adopted English common law with respect to claims for personal injury and English law generally with respect to air transport cases, and has a wrongful death statute.

As to Indonesia, the defendants' affidavits and declarations established that Indonesian and foreign parties may submit to the jurisdiction of Indonesian courts by written consent; that under the Indonesian Civil Code, defendants may waive the statute of limitations; that the court can compel the attendance of witnesses; and that third party indemnity claims are permitted. These affidavits and declarations further showed that Indonesian courts would apply Indonesian law, and remedies would be available to the injured seamen and their survivors under Indonesia's Workmen's Compensation Law, under the Indonesian Civil Code for Negligence, under the Indonesian Carriage by Air Act, and under the Warsaw Convention.

The affidavits which the plaintiffs filed in the district court were insufficient to counter significantly the affidavits and declarations filed on behalf of the defendants. The plaintiffs, however, have now submitted supplemental affidavits which they ask us to consider for the first time on appeal. They contend these supplemental affidavits show that neither Singapore nor Indonesia is a satisfactory alternative forum. Normally, we will not permit the record on appeal to be supplemented with evidence not presented to the district court. *Karmun v. Commissioner*, 749 F.2d 567, 570 (9th Cir.1984), *cert. denied*, 474 U.S. 819, 106 S.Ct. 66, 88 L.Ed.2d 53 (1985). *See* Fed.R.App.P. 10(a); Ninth Circuit Rules 4(a), 4(b) and 13(a)(1). However, even if we were to consider the plaintiffs' proffered affidavits, we would still agree with the district court that the defendants have established that Singapore and Indonesia are satisfactory alternative fora.[7] Such alternative fora may not provide all of the remedies and benefits which might be available in an American court, but the remedies provided are not "so clearly inadequate or unsatisfactory that [there] is no remedy at all." *Piper*, 454 U.S. at 254, 102 S.Ct. at 265. The plaintiffs' "potential damages award may be smaller, [but] there is no danger that they will be deprived of any remedy or treated unfairly." *Id.* at 255, 102 S.Ct. at 265. Accordingly, we conclude that a satisfactory alternative forum exists

---

ing nationalities. *In re Ocean Ranger Sinking Off Newfoundland on February 15, 1982*, 589 F.Supp. 302, 320 and n. 21 (E.D.La.1984).

7. The defendants request that sanctions be imposed against the plaintiffs for attempting to submit supplemental affidavits on appeal. The request is denied.

for the resolution of these claims of the foreign seamen.

### ii. *Private and Public Interest Factors*

We have determined that foreign law is applicable to the claims of the foreign seamen, and that satisfactory alternative fora exist for the resolution of these claims. We now consider, and balance, the private interest and public interest factors described by the Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). We listed these factors in *Pereira:*

> The private interest factors include: (1) relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling witnesses, and cost of obtaining attendance of willing witnesses; (3) possibility of viewing subject premises; (4) all other factors that render trial of the case expeditious and inexpensive. (citation omitted).
>
> The public interest factors include: (1) administrative difficulties flowing from court congestion: (2) imposition of jury duty on the people of a community that has no relation to the litigation; (3) local interest in having localized controversies decided at home; (4) the interest in having a diversity case tried in a forum familiar with the law that governs the action; (5) the avoidance of unnecessary problems in conflicts of law. (citation omitted).

*Pereira* at 690.

### (a) *The Private Interest Factors*

In applying the private interest factors to the foreign seamen's claims, the district court noted that access to the sources of proof clearly pointed to trial in Singapore or Indonesia. Most of the evidence and witnesses are located at or near the crash site in Indonesia or the airport in Singapore where the airplane was serviced and prepared for take-off.[8] The district court further noted that none of the evidence or witnesses was located in California, and

that none of the material witnesses was subject to compulsory process in the district court, whereas many were located in Indonesia and Singapore and would be subject to process in those courts. Although plaintiffs have agreed to stipulate that they will pay all the costs of bringing these witnesses to the United States, they cannot assure that the witnesses will be willing to make this journey. The district court also noted that it may not be able to acquire personal jurisdiction over potential third-party defendants such as Airfast and the government of Indonesia. The district court concluded that the balance of the private interest factors tips in favor of dismissing, for *forum non conveniens*, the foreign seamen's lawsuits. We agree.

### (b) *The Public Interest Factors*

In its consideration of the public interest factors, the district court found that the foreign seamen's lawsuits lacked a significant connection with the district court forum; that California had no interest in the actions; that the lawsuits would impose a burden on the district court's docket and would impede the ability of local litigants to get their cases to trial; that it would be a burden to the people of the community to have to sit as jurors on the cases; and that the application of foreign law in a foreign forum would not be inconsistent with the convenience of the foreign seamen. These findings weigh in favor of dismissal of the claims.

■ We conclude that the district court did not abuse its discretion in dismissing the foreign seamen's lawsuits for *forum non conveniens*, subject to the conditions which the district court imposed. *See Pereira*, 764 F.2d at 690 (approving similar conditions); *Koke*, 730 F.2d at 214 (same); *In re Ocean Ranger*, 589 F.Supp. at 323 (same).

### b. *The American Seaman's Claim*

Were we to apply a *forum non conveniens* analysis to the claim on behalf of the

---

**8.** Plaintiffs argue that a localized liability inquiry is not necessary because the cause of the crash was established as pilot error. Defendants have not admitted that pilot error was the sole cause of the plane crash, and suggest that some fault is attributable to Indonesian air traffic controllers.

deceased American seaman, we might well conclude that his claim should also be dismissed. There are, after all, the same alternative fora available for resolution of his claim. The remedies are not as attractive as the remedy under the Jones Act, but notwithstanding this disadvantage, there still is a remedy. *See Piper*, 454 U.S. at 249 and 254, 102 S.Ct. at 262 and 265. And, if we were to consider the private and public interest factors, we might conclude that they favor dismissal of the American seaman's case. The fact that this claim has been filed in an American court on behalf of an American is a factor which points toward retention of the American seaman's case. *See Piper*, 454 U.S. at 255–56, 102 S.Ct. at 265–66 ("When the home forum has been chosen, it is reasonable to assume that this choice is convenient"). But this factor is not decisive. *Id.*, n. 23. What is decisive, however, and what distinguishes the American seaman's claim from the claims of the foreign seamen, is the concession of the parties and the conclusion of the district court that the Jones Act applies to the claim for the deceased American. The Fifth, Tenth and Eleventh Circuits (in cases involving claims by or on behalf of foreign seamen) have all held that if the Jones Act applies to a seaman's claim, dismissal for *forum non conveniens* is precluded. *See Nicol v. Gulf Fleet Supply Vessels, Inc.*, 743 F.2d 289, 293 (5th Cir.1984) ("this Court has held that if American law [i.e., the Jones Act] applies, a federal court should retain jurisdiction." (citation omitted)); *Needham v. Phillips Petroleum Co. of Norway*, 719 F.2d 1481, 1483 (10th Cir.1983) ("if American law [i.e., the Jones Act] is applicable to the case, the forum non conveniens doctrine is inapplicable." (citation omitted)); *Szumlicz v. Norwegian American Lines, Inc.*, 698 F.2d 1192, 1195 (11th Cir.1983) ("if United States

law [i.e., the Jones Act] applies, the case should not be dismissed for forum non conveniens.").[9]

Only the Second Circuit has taken a different view. *See Cruz v. Maritime Co. of Philippines*, 702 F.2d 47, 48 (2nd Cir.1983) (per curiam). Until this decision, "[i]t had been axiomatic ... that if the Jones Act applied under *Rhoditis*, an American court could not decline to hear the case." Edelman, *Forum non Conveniens; Its Application in Admiralty Law*, 15 J. of Maritime Law and Commerce 517, 529. Although *Cruz* has recently been cited by the Second Circuit as standing for the proposition that "the forum non conveniens doctrine is applicable in Jones Act cases," *Transunion Corp. v. PepsiCo, Inc.*, 811 F.2d 127, 130 (2nd Cir.1987) (a fraud and civil RICO action), it has been suggested that statements to this effect in *Cruz* are dicta because in *Cruz* American law did not apply to the injured seaman's claim. *See* Edelman, 15 J. of Maritime Law and Commerce 517, 530 (1984), reporting comments by Professor Y.N. Yiannopoulos, W.R. Irby Professor of Law at Tulane Law School. This suggestion appears to have merit. The injured seaman in *Cruz* was Filipino. He was injured while aboard a vessel which was passing through American waters. At the time of the injury, the vessel was moored in the Port of Camden, New Jersey. The owners and crew were all Philippine citizens, except one officer who was a U.S. citizen permanently residing in the Philippines. The vessel flew the Philippine flag. The defendant's principal base of operations was the Philippines. Considering all of these factors, the district court concluded that the Jones Act did not apply, and dismissed the case for *forum non conveniens*. *Cruz v. Maritime Co. of Philippines*, 549 F.Supp. 285 (S.D.N.Y.1982),

---

**9.** The Fifth Circuit has recently signaled its departure from this position. *In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147, 1163 n. 25 (5th Cir.1987). In footnote 25 of *Air Crash*, a divided en banc panel of the Fifth Circuit, with Judges Garza, Johnson, Garwood, and Higginbotham not joining in the footnote, stated that in view of the Supreme Court's opinion in *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), and the

district court's analysis in the present case, *Sherrill v. Brinkerhoff Maritime Drilling*, 615 F.Supp. 1021, 1034–35 (N.D.Cal.1985), it disapproved and overruled all of its Jones Act case law in which it had previously held that if the Jones Act applied to a case, then the case should not be dismissed for *forum non conveniens*. *Air Crash*, 821 F.2d at 1163 n. 25. *Air Crash* was not a Jones Act case.

*aff'd* 702 F.2d 47 (2nd Cir.1983). The Second Circuit did not address the question whether the Jones Act applied. Instead, in affirming the district court's dismissal, it stated that a choice of law analysis is not appropriate in a Jones Act case. 702 F.2d at 48. However, if the Jones Act did not apply to the case, as the facts suggested and the district court concluded, then this comment does indeed appear to be dictum.

In any event, however, we find the decisions of the Fifth, Tenth and Eleventh Circuits which preclude dismissal of a Jones Act case for *forum non conveniens* to be persuasive. This view is buttressed by decisions of the Supreme Court in which the Court has commented upon the unavailability of *forum non conveniens* as a basis for dismissal of cases filed under the Federal Employers' Liability Act (FELA). In *Gilbert*, the Court stated: "It is true that in cases under the Federal Employers' Liability Act we have held that plaintiff's choice of a forum cannot be defeated on the basis of *forum non conveniens.*" 330 U.S. at 505, 67 S.Ct. at 841. The Court in *Gilbert* cited *Baltimore & Ohio R. Co. v. Kepner*, 314 U.S. 44, 62 S.Ct. 6, 86 L.Ed. 28 (1941) for this proposition. In *Kepner*, the Court stated that the "privilege of venue, granted by the legislative body which created this right of action [under the FELA], cannot be frustrated for reasons of convenience or expense." 314 U.S. at 54, 62 S.Ct. at 10. The Jones Act incorporates the FELA, 46 U.S.C. § 688(a),[10] and both the Jones Act and the FELA have specific venue provisions. The FELA provides in relevant part:

> Under this chapter an action may be brought in a district court of the United States, in the district court of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing the action.

45 U.S.C. § 56.

The portion of the Jones Act which pertains to jurisdiction and venue provides:

> Jurisdiction in [actions under the Jones Act] shall be under the court of the district in which the defendant employer resides or in which his principal office is located.

46 U.S.C. § 688(a).

■ In view of the Supreme Court's comments as to the unavailability of the *forum non conveniens* doctrine in FELA cases, the degree of similarity between the specific venue provisions under the Jones Act and under the FELA, and the incorporation of the FELA into the Jones Act, we believe that the *forum non conveniens* doctrine should be unavailable as a ground for dismissal under the Jones Act as it is under the FELA. (*Cf. La Seguridad v. Transytur Line*, 707 F.2d 1304, 1310, n. 10 (11th Cir.1983) (suggesting that Congress implicitly spoke to, and rejected, the *forum non conveniens* doctrine in both FELA and Jones Act cases)); *and see Dalla v. Atlas Maritime Co.*, 562 F.Supp. 752, 757 (C.D. Cal.1983) ("[W]hen a seaman has a cause of action based on American law, he comes by right into American courts."), *aff'd* 771 F.2d 1277 (9th Cir.1985). Finally, we see no reason to depart from the clear weight of authority in those circuits which have considered this question. We hold that when the Jones Act applies to a seaman's claim, that claim may not be dismissed on the ground of *forum non conveniens.*

### C. *The Injunction*

When the district court dismissed the plaintiffs' lawsuits for *forum non conveniens*, the plaintiffs who did not settle their claims reactivated lawsuits they had previously filed in the Texas state court. In response to this, the district court enjoined the plaintiffs and their attorneys from "filing and/or prosecuting actions in the state courts of Texas or any other court in the United States ... arising out of the air

---

**10.** Section 688(a) of the Jones Act provides in relevant part: "Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply." 46 U.S.C. § 688(a).

crash on April 28, 1981...." We review the grant of this injunction for abuse of discretion. *Golden v. Pacific Maritime Ass'n,* 786 F.2d 1425, 1426 (9th Cir.1986).

The Anti–Injunction Act provides that: A court of the United States may not grant an injunction to stay proceedings in a state court except [1] as expressly authorized by act of Congress or [2] where necessary in aid of its jurisdiction or [3] to protect or effectuate its judgment.

28 U.S.C. § 2283.

This court strictly construes these three exceptions to the Anti–Injunction Act. *Alton Box Board Co. v. Esprit de Corp.,* 682 F.2d 1267, 1271 (9th Cir.1982).

■ The first exception to the Anti–Injunction Act does not apply here, because there is no express statutory authorization for an injunction in this situation. The second exception applies to the American seaman's lawsuit, because, under our holding in this case, the district court will retain jurisdiction over that lawsuit. *See Alton Box,* 682 F.2d at 1271. This exception does not apply, however, to the foreign seamen's lawsuits because the district court no longer has jurisdiction over those suits. *Id.* The district court held that jurisdiction was more properly in a foreign forum and dismissed the foreign seamen's cases. At that point there was no need for an injunction to protect the district court's jurisdiction. *Id.*

■ The third exception to the Anti–Injunction Act similarly does not support the district court's injunction. This court has held that a district court may grant an injunction to protect the *res judicata* effect of its judgment "where a federal litigant has prevailed on the merits, yet is threatened with burdensome and repetitious relitigation of the same issues in a multiplicity of actions." *Golden,* 786 F.2d at 1427. Defendants argue that a determination on the merits is not required for an injunction against state court actions when a district court has dismissed a lawsuit for *forum non conveniens* arising in the same matters. The wording of our cases, however,

is explicit, and refers to decisions on the merits. *See Golden,* 786 F.2d at 1427; *Midkiff v. Tom,* 725 F.2d 502, 504 (9th Cir.1984). Here, defendants have prevailed on a procedural point pertaining to the propriety of the prosecution of the foreign seamen's lawsuit in a United States district court. No judgment on the merits has been rendered. The grant of the injunction against the foreign seamen prosecuting their lawsuits in state court violated the Anti–Injunction Act and was an abuse of discretion.

The recent Fifth Circuit case of *Exxon Corporation v. Chick Kam Choo,* 817 F.2d 307 (5th Cir.1987) is inapposite. In *Exxon,* the surviving wife of a seaman who had been injured and died on board ship in Singapore, brought suit in the federal district court in Houston, Texas. The district court granted the defendants' motion for summary judgment "as to Plaintiffs' claims under the Jones Act, the Death on the High Seas Act, the Longshoremen's and Harbor Workers Compensation Act, *and the general maritime laws of the United States." Exxon,* 817 F.2d at 310 n. 4 (emphasis in original). Having thus disposed of these claims on the merits, the court nonetheless granted the defendants' motion to dismiss "under the doctrine of *forum non conveniens,* ... without prejudice," and subject to conditions which permitted the plaintiff to refile her suit in Singapore. *Id.*

The judgment permanently enjoined the plaintiff from prosecuting any action against the defendants in the courts of Texas or any other state, arising out of or related to the death of the plaintiff's husband on board ship in Singapore. The plaintiff did not appeal this judgment and it became final. She then attempted to pursue, against the defendants in the state court in Houston, Texas, the same claims she had filed against them in the federal district court in Houston. The defendants filed a new suit in federal court in Houston to enjoin the state proceeding. The district court granted a permanent injunction enjoining the state proceeding and sanctioned the plaintiff's attorneys for pursuing it.

The Fifth Circuit, with one member of the three-judge panel concurring and one dissenting, affirmed the judgment of the district court. What established the opinion as a majority opinion was the concurrence of Judge Clark. He pointed out that the plaintiff was simply bound by the earlier judgment which enjoined her from relitigating the case in state court; he did not concur in Judge Gee's *forum non conveniens* analysis. *Exxon,* therefore, is not a majority opinion on *forum non conveniens* and hence is not in conflict with our unanimous opinion in this case.

## CONCLUSION

The district court did not abuse its discretion in reconsidering the earlier denial of the defendants' *forum non conveniens* motions. The district court correctly determined that foreign law applies to the claims of the foreign seamen, and it did not abuse its discretion in dismissing the foreign seamen's lawsuits for *forum non conveniens.* The district court did abuse its discretion in dismissing the lawsuit on behalf of the deceased American seaman, because the Jones Act applies to this claim. *Nickol,* 743 F.2d 289; *Needham,* 719 F.2d 1481; *Szumlicz,* 698 F.2d 1192.

The injunction enjoining the foreign seamen from prosecuting their claims in state court is precluded by the Anti–Injunction Act. Accordingly, that portion of the injunction is vacated. Since the district court will be retaining the lawsuit filed on behalf of the deceased American seaman, however, that portion of the injunction enjoining the prosecution of the lawsuit on his behalf in any other court in the United States is appropriate but is modified to except prosecution in the United States District Court for the Northern District of California. The portion of the judgment granting the permanent injunction as to the claim for the deceased American seaman is affirmed as modified.

AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART, MODIFIED AND REMANDED.