William O. DAUGHTRY, Jr., Plaintiff,

v.

DIAMOND M COMPANY, et al., Defendants,

And Related Actions.

No. CV 86–6875 AHS (Tx).

United States District Court, C.D. California.

Sept. 2, 1988.

Charles D. Naylor, Naylor & Nizich, San Pedro, Cal., for plaintiff.

Roger E. Marken, Ives, Kirwan and Dibble, Vernon T. Meador, III, McCrutchen, Black, Verleger & Shea, Los Angeles, Cal., Clifford H. Pearson, Edward A. DeBuys, Wasserman, Comden & Casselman, Tarzana, Cal., Roger E. Hawkins, Hawkins, Schnabel & Lindahl, Los Angeles, Cal., for defendants.

OPINION ON ORDER (1) DENYING MOTIONS FOR DETERMINATION OF GOOD FAITH SETTLEMENT AND FOR DISMISSAL OF CROSS–CLAIMS, COUNTERCLAIMS AND THIRD PARTY CLAIMS; (2) FOR CERTIFICATION UNDER 28 U.S.C. § 1292(b); and, (3) FOR STAY PENDING APPEAL

STOTLER, District Judge.

### FACTS

Plaintiff seeks damages for personal injuries suffered while on board an oil rig on October 24, 1985. He alleges he was struck on the head and shoulders by a six-inch rubber vent-hose which was being lifted by a crane on board the rig.

Daughtry filed suit on October 22, 1986 against Diamond M Company and Sun Oil Company, the alleged owners and operators of the Diamond M Falcon, the vessel on which Daughtry sustained his injuries. Jurisdiction of the original complaint was founded on the Jones Act, 46 U.S.C.App. § 668. The pleading contained claims for negligence under 46 U.S.C.App. § 688 [1], unseaworthiness, maintenance and cure and general maritime negligence.

---

1. The Jones Act provides in pertinent part:

Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply.... Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located.

46 U.S.C.App. § 688.

In a first amended complaint, filed with leave of Court on March 31, 1987, Daughtry named as additional defendants Diamond M Falcon, Ltd. (alleged owner of the vessel), Sun Exploration & Production Co. (alleged operator of the vessel), and Otis Engineering (alleged installer of the hose on board the rig). The first amended complaint stated the same claims as in the original complaint. Daughtry voluntarily dismissed Sun Oil on September 25, 1987.

In his second amended complaint, filed with leave of Court on October 23, 1987, Daughtry added defendant North American Hose & Coupling (NAHC), alleged assembler and distributor of the injury-inflicting hose. The second amended complaint added claims related to products liability against NAHC. In his prayer for relief, Daughtry requested general damages, special damages, lost earnings and future lost earnings, medical expenses and future medical expenses, maintenance and cure benefits, costs of suit and other relief as deemed appropriate by the Court.

NAHC filed a cross-claim for indemnity, against Diamond M Co., Diamond M Falcon, Ltd., Sun Oil, Sun Exploration, Otis, Diamond M Falcon Co. and Semperit Industrial Products, Inc. (alleged manufacturer of the rubber hose) on December 21, 1987. Sun Exploration and the Diamond M entities (hereinafter collectively referred to as Diamond) jointly filed a cross-claim for indemnity on January 13, 1988, naming as cross-defendants NAHC and Semperit. Otis filed a cross-claim for indemnity against Semperit and a counterclaim for indemnity against NAHC on January 28, 1988. All claims against Semperit were dismissed pursuant to a stipulation and Order filed and entered on July 25, 1988.

The hose in question consisted of a string of hose sections coupled together with metal fittings. When connected, the hose string ran approximately 150 feet in length from a test barge to test equipment on the Diamond M Falcon. On the day of the subject accident, the hose was disassembled for repairs. Upon reassembly, the hose was set up to be redeployed to the barge. Part of the hose was draped over the railing of the Falcon and tied off at a handrail.

The feeding process entailed successive liftings by a crane to remove slack in the hose followed by cutting the tie at the handrail to release a length of hose overboard. According to Otis and NAHC, on the day of the accident, Diamond M captain Edward E. Arendt cut the line at the handrail before the slack was out in the hose. As a result, the hose ran over the rail with sufficient force to break free of its metal fitting and strike plaintiff.

Otis participated in the initial assembly of the hose on the Falcon, but claims the hose was disassembled and reassembled by Diamond M personnel on the day of the accident. Otis also claims it did not own the hose and had no duty to maintain and repair the hose. NAHC characterizes itself as a peripheral party to this lawsuit and its liability as correspondingly remote. Diamond claims NAHC supplied the injury-inflicting and allegedly defective hose. According to Diamond, the coupling mechanisms were improperly banded to the hose and the type of hose and coupling were not fit for being lifted by a crane. If the hose was defective as supplied, Diamond argues, NAHC could be liable for all of plaintiff's damages based on the warranty of workmanlike performance. NAHC maintains Captain Arendt was solely or primarily at fault for plaintiff's injuries because Arendt cut the soft line (by which the hose was tied to the handrail) too early.

The parties have undertaken substantial discovery in this matter. Defendants Otis and NAHC have reached settlement agreements with plaintiff, whereby each would pay plaintiff $50,000 in exchange for a release of liability (for a total of $100,000). On June 9, 1988, Otis and NAHC each filed a motion for determination of good faith settlement pursuant to Cal.Civ.Proc.Code §§ 877 and 877.6. Diamond filed opposition to the motions on June 13, 1988. Otis and NAHC each filed a reply on June 16, 1988.

Settling defendants' motions came on for hearing before the Court on June 20, 1988. After oral argument, the Court took the

motions under submission. Nonsettling defendants filed an evidentiary offer of proof, at the Court's invitation, on June 24, 1988. On June 28, 1988, the Court issued a minute order denying settling defendants' motions brought under Cal.Civ.Proc.Code §§ 877 and 877.6 and indicating the Court's intention to issue a formal opinion on the applicability of §§ 877 and 877.6 to actions under federal maritime law and the Jones Act. (A copy of the minute order is appended hereto.)

On July 19, 1988, the Court approved the stipulation of the parties to continue the Pre–Trial Conference to November 7, 1988. A date for trial is to be set then. On August 3, 1988, the settling defendants moved the Court for its order that the issue herein be deemed appealable pursuant to 28 U.S.C. § 1292(b) and that all proceedings be stayed pending that procedure and appeal, if any. Plaintiff opposed only the request for a stay while Sun and Diamond opposed both motions.

### DISCUSSION

### I

#### *Motion for Settlement*

By their motions, Otis and NAHC seek a judicial determination that their respective settlements are in good faith under Cal.Civ.Proc.Code §§ 877 and 877.6 and that all cross-claims against them for contribution and indemnity should be dismissed. The non-settling defendants contest the applicability of §§ 877 and 877.6 to a federal maritime action. They also contend the settle-

2. Section 877.6 provides in pertinent part:
  (a) Any party to an action wherein it is alleged that two or more parties are joint tortfeasors ... shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors ..., upon giving notice thereof in the manner provided in Sections 1010 and 1011 at least 20 days before the hearing....
  (b) The issue of the good faith of the settlement may be determined by the court on the basis of affidavits served with the notice of hearing, and any counteraffidavits filed in response thereto, or the court may, in its discretion, receive other evidence at the hearing.

ments are not in good faith and, even if they are in good faith, do not relieve the settling defendants from claims for indemnification.

The narrow issue before the Court is whether settling joint tortfeasors in a multidefendant admiralty action may avail themselves of the provisions of Cal.Civ. Proc.Code §§ 877 and 877.6.

Under §§ 877 and 877.6 of the California Civil Procedure Code, a settling joint tortfeasor may obtain dismissal of cross-actions for contribution or comparative indemnity upon a judicial determination that the settlement was entered into in good faith. Section 877 provides in pertinent part:

> Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort ...:
>
> ....
>
> (b) It shall discharge the party to whom it is given from all liability for any contribution to any other parties.

Section 877.6 entitles a settling defendant to a hearing on the issue of good faith. In addition, § 877.6 authorizes the Court to settle the issue of good faith on the basis of affidavits, and provides that a determination of good faith bars other suits for contribution or indemnity. In addition, § 877.6 places the burden of proof on the party challenging good faith. Cal.Civ.Proc. Code § 877.6.[2]

  (c) A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor ... from any further claims against the settling tortfeasor ... for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault.
  (d) The party asserting lack of good faith shall have the burden of proof on that issue.
The Supreme Court of California outlined the criteria for determining good faith in *Tech–Bilt, Inc. v. Woodward–Clyde & Associates,* 38 Cal.3d 488, 499, 213 Cal.Rptr. 256, 698 P.2d 159 (1985). The *Tech–Bilt* court found that "good faith" under § 877.6 turns on "whether the amount of the settlement is within the reasonable range of the settling tortfeasor's proportional share of

The provisions of §§ 877 and 877.6 reflect two major policy goals: "the equitable sharing of costs among the parties at fault and the encouragement of settlements." *Abbott Ford, Inc. v. Superior Court,* 43 Cal.3d 858, 871–72, 239 Cal.Rptr. 626, 741 P.2d 124 (1987). The two goals are "inextricably linked." *Id.* at 873, 239 Cal.Rptr. 626, 741 P.2d 124. Accordingly, a good faith settlement not only releases the settling defendant from liability for contribution or comparative indemnity, but also reduces the plaintiff's claims against the non-settling defendants. *Id.* The requirement of a judicial determination of good faith " 'insure[s] that such settlements appropriately balance the contribution statute's dual objectives.' " *Id.* (quoting *Tech–Bilt,* 38 Cal.3d at 494, 213 Cal.Rptr. 256, 698 P.2d 159).

Otis and NAHC urge the Court to apply §§ 877 and 877.6 to their proposed settlements. The non-settling defendants contend state law rules regarding settlement among joint tortfeasors do not apply in a federal admiralty action. Diamond contends application of §§ 877 and 877.6 would deprive the non-settling defendants of substantive rights under federal maritime law.

The parties do not dispute that federal maritime law, not state law, will supply the rule of decision on the underlying liability issues in this case. *See Kizer v. Peter Kiewit Sons' Co.,* 489 F.Supp. 835, 838 (N.D.Cal.1980). Admiralty law is federal law and, notably, one of the narrow areas subject to federal common law. *Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 642, 101 S.Ct. 2061, 2067, 68 L.Ed.2d 500, 509–10 (1981); *see also Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256, 259, 99 S.Ct. 2753, 2756, 61 L.Ed.2d 521, 526–27 (1979) ("[a]dmiralty law is judge-made to a great extent"). The issue is drawn only as to the governing law regarding settlements.

The settlement and dismissal scheme set forth in Cal.Civ.Proc.Code §§ 877 and 877.6 reflects the expressed public policy of the state of California. The federal government has not made a similar or analogous expression of policy regarding settlement of multidefendant admiralty actions.[3] Federal maritime law and the Jones Act do reflect certain policy considerations. For example, the Jones Act manifests a congressional determination to provide protection to mariners who are victims of negligence.[4] *Self v. Great Lakes Dredge & Dock Co.,* 832 F.2d 1540, 1548 (11th Cir. 1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 2017, 100 L.Ed.2d 604 (1988). Similarly, "[t]he general goal of maritime law is to provide quick and full compensation to the injured seaman, while leaving the primary litigation dispute to the question of which joint tortfeasor is liable for what percentage of the damages." *Id.*

The substance and procedures of admiralty law reflect determinations of Congress and the federal courts; the California Code of Civil Procedure does not. Settling defendants have not provided, and the Court cannot find authority for directly

---

comparative liability for the plaintiff's injuries." The court also deemed relevant an approximation of the plaintiff's total recovery and the settling party's proportionate liability, the amount paid in settlement, and the financial condition and insurance limits of the settling defendant. The determining court should examine these factors with reference to the circumstances at the time of settlement rather than the contents of plaintiff's prayer for relief. *Horton v. Superior Court,* 194 Cal.App.3d 727, 735–36, 238 Cal.Rptr. 467 (1987). To challenge good faith, the objecting party has to show settlement is so far "out of the ballpark" in relation to the *Tech–Bilt* factors as to be inconsistent with the equitable objectives of the statutory scheme. *Tech–Bilt,* 38 Cal.3d at 499–500, 213 Cal.Rptr. 256, 698 P.2d 159. Moreover, the settlement

amount should reflect the savings and certainty provided by avoidance of trial.

3. That is not to suggest federal policy does not favor settlement, for surely it does. *Kizer,* 489 F.Supp. at 838; *cf. Nelson v. Bennett,* 662 F.Supp. 1324, 1334 (E.D.Cal.1987) (recognizing "overriding public interest" in settlement in federal securities case).

4. Opinions have referred to a person working on board a sea going vessel as a "seaman." *E.g., Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 232, 106 S.Ct. 2485, 2500, 91 L.Ed.2d 174, 196 (1986). Since women as well as men work on board sea going vessels, however, the gender neutral term "mariner" is used where appropriate in place of "seaman."

applying §§ 877 and 877.6 to a maritime case such as that now before the Court.

In *Sherrill v. Brinkerhoff Maritime Drilling*, 615 F.Supp. 1021 (N.D.Cal.1985), an opinion devoted primarily to other issues, Judge Schwarzer addressed the question whether the District Court could make a determination under § 877.6 that settlements were made in good faith "in actions under the Jones Act and under general maritime law. The issue [was] whether the release and contribution rules under §§ 875 *et seq.* conflict with maritime law applicable to those actions." *Id.* at 1036. On the basis of a "brief and admittedly superficial glance at the law," Judge Schwarzer concluded that a determination of good faith under § 877.6 was within his authority. *Id.* at 1037.

The *Sherrill* opinion did not address the source of its authority to apply California law. Instead, the court concluded that any conflict between the Jones Act and § 877.6 was sufficiently remote in that particular case so as not to prevent application of § 877.6. *Id.* In view of the avowedly cursory nature of the *Sherrill* court's examination of the law pertaining to multidefendant Jones Act cases, *Sherrill* cannot be regarded as controlling authority on the issue. Moreover, questions of contribution and indemnity, deemed remote in *Sherrill*, are prominent in this case.

Other cases cited by settling defendants do not substantiate the proposition that this Court may apply §§ 877 and 877.6 to a maritime action. In *Owen v. United States*, 713 F.2d 1461 (9th Cir.1983), the court applied § 877 in the context of a claim brought under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680. Claims brought under the Federal Tort Claims Act are governed by the law of the state where the acts sued upon took place, not federal common law. *See United States v. Muniz*, 374 U.S. 150, 153, 83 S.Ct. 1850, 1852, 10 L.Ed.2d 805, 809 (1963);

*Platts v. United States*, 658 F.Supp. 850, 853 (D.Me.1987). Similarly, *Commercial Union Insurance Co. v. Ford Motor Co.*, 640 F.2d 210 (9th Cir.), *cert. denied*, 454 U.S. 858, 102 S.Ct. 310, 70 L.Ed.2d 154 (1981), on which the *Owen* court relied, was a diversity action, in which the substantive law of California provided the rule of decision. 640 F.2d at 212.

In contrast, federal law supplies the rule of decision in this case. It makes sense to allow federal court litigants to avail themselves of California's good faith settlement scheme in cases where that scheme is invoked in furtherance of rights grounded in California state law. In cases governed by state law, federal district courts act to some degree as surrogate state courts. In federal maritime actions, however, federal courts sit as "pure" federal courts, governed by federal procedural rules and federal substantive law. In such instances, "our federal system does not permit the controversy to be resolved under state law." *Texas Industries, supra,* 451 U.S. at 641, 101 S.Ct. at 2067, 68 L.Ed. 2d at 509. *See also* P. Bator, D. Shapiro, P. Mishkin & H. Wechsler, The Federal Courts and the Federal System 821 (2d ed. 1973) ("in personal injury litigation not involving death it is the uniform maritime law, and not state law, that governs the rights and liabilities of the parties"). Thus, the Court may not blithely apply provisions of state law to this case, regardless of whether doing so might produce salutary results.[5] Therefore, irrespective of whether the proposed settlements might meet the criteria for good faith under California law, the Court must deny Otis' and NAHC's motions.

Settling defendants suggest in their reply memoranda that a federal settlement bar rule identical or analogous to California's good faith settlement procedure exists. Otis and NAHC rely on *Nelson v.*

---

**5.** Engrafting state rules of procedure such as Cal.Civ.Proc.Code §§ 877 and 877.6 also raises practical difficulties. For example, a determination of good faith under California law is not directly appealable. *Chernett v. Jacques,* 202 Cal.App.3d 69, 248 Cal.Rptr. 63 (1988), *modified*

*on denial of reh'g,* 88 Daily Journal D.A.R. —— (Cal.App. July 12, 1988). Under federal law, interlocutory determinations can be certified for appeal. 28 U.S.C. § 1292(b). There exists no such procedure in California law.

*Bennett*, 662 F.Supp. 1324 (E.D.Cal.1987). *Nelson* involved an investment scheme centered around a plan to breed a form of "supercows." *Id.* at 1325–26. After the scheme collapsed, two classes of investors sued the alleged perpetrators of the scheme on the basis that certain investment prospectuses were misleading and failed to disclose material facts. *Id.* at 1326. The *Nelson* court declined to incorporate the California settlement bar rule and instead fashioned a federal settlement bar rule. *Id.* at 1338. In fashioning a federal rule, however, the *Nelson* court considered the same factors which underlie the California scheme. *Id.*

*Nelson* is not apposite, for it discusses the content of a federal common law rule. That is not at issue here. The only issue is whether a state settlement bar rule directly applies to a federal maritime case. In any event, *Nelson* did not establish a general federal settlement bar rule. The substantive issues in *Nelson* concerned federal securities law. As discussed above, maritime law is *sui generis*, preventing the Court from automatically imbuing the federal common law in maritime cases with rules formulated in securities law cases. The *Nelson* court relied on the existence of a judicially implied right of contribution in federal securities cases as authority for formulating a settlement bar rule. *Id.* at 1329 n. 8. Furthermore, the parties in *Nelson* acknowledged the authority of the district court to imply a settlement bar rule. *Id.* There has been no such acknowledgement in the case before this Court.

■ There is another problem with application of the state settlement bar rule here. To directly apply California's settlement bar rule may create inconsistencies in federal maritime law as to proportional fault of co-defendants. Plaintiff's second amended complaint includes claims against non-settling defendants based on the Jones Act and the doctrine of unseaworthiness. Under the Jones Act, a mariner who suffers personal injury in the course of employment may recover damages for negligence from the mariner's employer. *See* T. Schoenbaum, Admiralty & Maritime Law

§ 5–6, at 182 (1987). Under the doctrine of unseaworthiness, a mariner may recover damages from a vessel owner for personal injuries caused by a dangerous condition of the vessel. *Id.*, § 5–3, at 165–66. An isolated negligent act does not *a priori* create an unseaworthy condition. *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 498–500, 91 S.Ct. 514, 517–18, 27 L.Ed.2d 562, 566–68 (1971). On the other hand, where negligence gives rise to a dangerous condition, an injured mariner may seek recovery under both the Jones Act and the doctrine of unseaworthiness. *See* T. Schoenbaum, *supra*, § 5–3, at 167 & n. 23.

■ Under both doctrines, maritime law accepts the concept of proportional fault. *United States v. Reliable Transfer Co.*, 421 U.S. 397, 411, 95 S.Ct. 1708, 1715, 44 L.Ed.2d 251, 262 (1975); *Self, supra*, 832 F.2d at 1545 & n. 2; *see also Edmonds, supra*, 443 U.S. at 260 n. 7, 99 S.Ct. at 2756 n. 7, 61 L.Ed.2d at 527 n. 7 (citing cases). In unseaworthiness cases, a vessel owner who is wholly without negligence may seek indemnification from a contractor whose breach of the warranty of workmanlike performance caused the dangerous condition. *Ryan Stevedoring Co., Inc. v. Pan–Atlantic Steamship Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), *superseded in part by statute as stated in Edmonds, supra*, 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521. Generally, however, courts in maritime cases apply principles of pure comparative fault to apportion damages.

In multidefendant actions, one or more defendants may reach a settlement with the plaintiff. When this occurs, the non-settling defendants' shares of liability are reduced. *Self, supra*, 832 F.2d at 1545. Reduction is usually *pro rata*, i.e., the percentage of fault of the settling defendant(s) multiplied by the total amount of damages. *Leger v. Drilling Well Control, Inc.*, 592 F.2d 1246, 1248 (5th Cir.1979); *see also* T. Schoenbaum, *supra*, § 4–15, at 153–54. This "reduce by proportion of fault" method contrasts with a *pro tanto*, or "reduce by amount paid" approach, whereby non-settling defendants receive a dollar-for-dol-

lar credit for the amount of settlement. T. Schoenbaum, § 4–15, at 154.

Under the terms of Cal.Civ.proc.Code §§ 877 and 877.6, a settlement found to be in good faith both "discharges the settling tortfeasor from all liability to other defendants for contribution or indemnity, and ... reduces plaintiff's claims against the other defendants by 'the amount of consideration paid for it.' " *Abbott Ford, supra,* 43 Cal. 3d at 877, 239 Cal.Rptr. 626, 741 P.2d 124. California's settlement bar rule thus functions in the context of the "reduce by amount paid" approach. If a settlement is less than the settling defendant's proportional share of liability, partial settlement of a multidefendant maritime action may not produce similar "reduce by amount paid" results. Direct application of a state settlement rule to maritime actions could subject non-settling defendants to varying rules of liability, depending on the forum chosen by plaintiff.

To the extent of any conflict between state and federal maritime law, federal law will control. *Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 227, 106 S.Ct. 2485, 2427, 91 L.Ed.2d 174, 192–93 (1986) (in context of Death on the High Seas Act, 46 U.S.C. §§ 761–768). Even state courts asserting concurrent maritime jurisdiction are bound by federal maritime law under the so-called "reverse-*Erie* doctrine." *Id.,* 477 U.S. at 223, 106 S.Ct. at 2495, 91 L.Ed. 2d at 190. Although *Offshore Logistics* dealt with substantive law, the Fifth Circuit has given further definition to the doctrine, stating that when state court procedures are in conflict with federal maritime law, state law must yield. *Exxon Corp. v. Choo,* 817 F.2d 307, 319 (5th Cir.1987), *reversed on other grounds,* —— U.S. ——, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988) (Supreme Court declined to reach merits of pre-emption issue).

The Supreme Court has noted the constitutional difficulties in directly applying a myriad of state law rules which would tend to destroy the uniformity of federal maritime law. *Offshore Logistics,* 477 U.S. at 229, 106 S.Ct. at 2498, 91 L.Ed.2d at 194.

To subject maritime co-defendants to varying rules of liability would violate a policy behind federal maritime law, that is, to create uniform rules which tend to facilitate maritime commerce. *Exxon Corp.,* 817 F.2d at 317–18. *See also Moragne v. State Marine Lines,* 398 U.S. 375, 401–02, 90 S.Ct. 1772, 1788, 26 L.Ed.2d 339, 357 (1970) (recognition of wrongful death action under general maritime law assures "uniform vindication of federal policies, removing the tensions and discrepancies that have resulted from the necessity to accommodate state remedial statutes to exclusively maritime substantive concepts.... [U]niformity ... will give effect to the constitutionally based principle that federal admiralty law should be 'a system of law coextensive with, and operating uniformly in, the whole country.' ") (citing *The Lottawanna,* 88 U.S. (21 Wall.) 558, 575, 22 L.Ed. 654, 662 (1875)). This possible conflict, then, prevents application of the state rule.

That is not to suggest that any federal maritime settlement rule may not have the content of the California rule. A Court applying the good faith settlement rule as its federal common law rule may be able to reject settlements which would create disparate "reduce by amount paid" and "reduce by proportion of fault" results for non-settling defendants. It is not the task of this Court today, however, to formulate a federal maritime settlement rule. The parties based the instant motions on §§ 877 and 877.6. The parties did not address legal and policy considerations that apply to settlement of multidefendant maritime actions. The Court, therefore, was not required to rule on whether maritime law should include a settlement bar rule and, if so, what form such a rule should take.

At oral argument, confronted with the Court's inclination to grant Otis' and NAHC's motions, Diamond made an oral motion for certification for interlocutory appeal under 28 U.S.C. § 1292(b). The Court's subsequent denial of Otis' and NAHC's motions makes Diamond's motion

moot.[6]

## II

### Certification; Stay of Proceedings

After issuance of the Court's minute order denying approval of the settlement under §§ 877 and 877.6, Otis and NAHC moved the Court to issue appropriate findings under 28 U.S.C. § 1292(b). Since the Court's opinion holds that state procedural statutes governing settlement of state torts do not apply to Jones Act and maritime actions, the order cannot be said to be one which is a "controlling question of law" nor one which, reviewed on immediate appeal, may materially advance the ultimate termination of the litigation. As noted above, the content of any federal rule controlling settlement of multidefendant maritime actions will not be resolved by appeal.

Trial remains between plaintiff and the main defendants named in the original complaint. In the context of the settlement motions, plaintiff's entitlement to recovery of anywhere between $250,000 to $1.75 million was posited. Given the foregoing limited holding, it is also difficult to conclude that the order is one as to which there is substantial ground for difference of opinion, especially in light of all parties' acknowledgment that there is no authority for applying state settlement bar statutes to maritime actions.

For these and other reasons, the action should not be stayed. No irreparable injury to the settling defendants appears likely; nor will they be harmed by preparing for the November Pre–Trial Conference and trial when set. Plaintiff has shown that he is without income, and has been, since this 1985 accident, and thus further delay may substantially injure his interest in recovery of damages. The public interest presumably lies in prompt and just resolution of claims.

**6.** In any event, had the Court granted Otis and NAHC's motions, Diamond could have pursued an appeal under 28 U.S.C. § 1292(a)(3), which provides the courts of appeals with jurisdiction of appeals from:

The motions to issue findings under 28 U.S.C. § 1292(b) and to stay the proceedings are denied.

IT IS SO ORDERED.

## APPENDIX

United States District Court
Central District of California

CIVIL MINUTES—GENERAL

Case No. CV 86–6875 AHS (Tx)

Title William O. Daughtry, Jr. v. Diamond M Company, et al.

Date June 28, 1988

PRESENT:

HON. ALICEMARIE H. STOTLER. JUDGE

Carolyn Jackson

Deputy Clerk

Not present

Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:

Not present

ATTORNEYS PRESENT FOR DEFENDANTS:

Not present

PROCEEDINGS IN CHAMBERS:

(1) NORTH AMERICAN HOSE & COUPLING COMPANY'S MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT

(2) OTIS ENGINEERING CORPORATION'S MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT AND FOR DISMISSAL OF CROSS–CLAIMS, COUNTERCLAIMS AND THIRD PARTY CLAIMS

[i]nterlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed.

Defendant, cross-defendant, counter-claimant and cross-claimant Otis Engineering Corporation and defendant, cross-claimant and cross-defendant North American Hose & Coupling Company (hereinafter "settling defendants") each filed a motion for determination of good faith settlement pursuant to Cal.Civ.Proc.Code secs. 877 and 877.6 on June 9, 1988. Defendants, cross-defendants and cross-claimants Sun Exploration and Production Company, Diamond M Company, Diamond M Falcon, Limited and Diamond M Falcon Company (hereinafter "nonsettling defendants") filed opposition to both motions on June 13, 1988. Settling defendants each filed a reply on June 16, 1988.

Settling defendants' motions came on for hearing on the Court's June 20, 1988 calendar. After oral argument, the Court took the matter under submission. Nonsettling defendants filed an evidentiary offer of proof, at the Court's invitation, on June 24, 1988.

Settling defendants' motions, brought under Cal.Civ.Proc.Code secs. 877 and 877.-6, are denied. A formal opinion will follow on the applicability of secs. 877 and 877.6 to actions under federal maritime law and the Jones Act.

Nonsettling defendants' oral request for certification under 28 U.S.C. sec. 1292(b) is denied.

Pursuant to the Court's direction, the parties have been notified of the contents of this minute order by telephone. The Clerk shall serve a copy of this minute order on all counsel of record.